UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

THE HANOVER INSURANCE COMPANY,    :
    :
     Plaintiff    :
    :
     v.    :
    :
J&S PROMOTIONS, LLC; James F. Smith,    :
a/k/a Jim Smith; and Stanny R. Park,    :
    :
     Defendants.    :
    :
    :

## COMPLAINT FOR DECLARATORY JUDGMENT

### I.    Preliminary Statement

The Hanover Insurance Company ("Hanover") brings this complaint for declaratory judgment pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201-2202, and Fed. R. Civ. P. 57, seeking a determination as to the rights and responsibilities of the parties under a contract of insurance issued by Hanover to the named insured, Defendant, J&S Promotions, LLC, Policy No. IHP D262113 00 ("Hanover Policy"), with respect to claims for bodily injury and property damage allegedly resulting from the grounding of the insured's motor yacht upon a coral reef on or about December 28, 2017 ("Grounding Incident").

1.    No coverage is available under the Hanover Policy in connection with the Grounding Incident because numerous conditions of the contract of insurance were violated on the day of, and on the days immediately preceding, the Grounding Incident, including the insured operating the yacht during overnight trips, and operating it at night, and towing a tender, all without the captain aboard.

## II.    The Parties

2.      The Plaintiff, Hanover Insurance Company ("Hanover") is a corporation organized under the laws of the State of New Hampshire and and has a principal place of business in Worcester, Massachusetts.  Hanover is a property and casualty insurance company authorized to transact business in the State of Florida.

3.      The Defendant, J & S Promotions, LLC ("J&S") is a Limited Liability Company organized under the laws of the State of Florida, with its principal address at 602 Applewood Avenue, Altamonte Springs, Florida.  The Sole Member and Registered Agent of J&S is the Defendant James F. Smith.  The Florida Secretary of State identifies the address of the Registered Agent as 14700 Duke Hwy, Alva, Florida 33920.  J&S is the named insured under the Hanover Policy.

4.      The Defendant, James F. Smith ("Smith") is a resident of the State of Florida.  Mr. Smith resides at 602 Applewood Avenue, Altamonte Springs, Florida.  Smith is an insured under the Hanover Policy.  Claims for bodily injury and property damage arising from the Grounding Incident have been asserted against Smith, for which Smith seeks insurance coverage.

5.      The Defendant, Stanny R. Park ("Park") is a resident of the State of Florida.  Ms. Park resides at 3265 Hidden Lake Drive, Winter Garden, Florida 34787.  Ms. Park has made a claim or demand for damages against Smith, alleging bodily injuries arising from the Grounding Incident.  She is named herein as an interested party to be bound by the judgment.

## III.    Jurisdiction and Venue

6.      This is an action for declaratory relief pursuant to 28 U.S.C. Section 2201 and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure governing admiralty and maritime claims.

1025208\304641732.v1

7.     This Court has original admiralty or maritime subject matter jurisdiction, exclusive of the courts of the States, pursuant to 28 U.S. Code § 1333 and Article 3, Section 2 of the United States Constitution, because this matter concerns a contract of marine insurance on a vessel. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313-14, 75 S. Ct. 368, 370 (1955), citing *The New England Marine Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 31, 20 L. Ed. 90 (1871).

8.     This Court also has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1), based upon the diversity of the citizenship and the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.  Plaintiff and defendants are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this district in accordance with 28 U.S.C. § 1391(b)(2) because the  insured boat at issue was ported, and a  substantial part of the events giving rise to this suit occurred, in Fort Myers, Lee County, Florida.

### IV.     Facts

10.     Hanover issued a Hanover Yacht Policy, Policy No. IHP D262113 00 ("Hanover Policy"), with a period of May 5, 2017 to May 5, 2018.  A true and accurate copy of the Hanover Policy is attached hereto as Exhibit A.

11.     The Hanover Policy includes two coverage parts.  Section I provides first-party property insurance.  Section II provides liability insurance.  See Ex. A, Sections I and II.

12.     The Hanover Policy applies to a 78-foot long, 2010 Marlow 78 Explorer motor yacht named "Quality Time" ("Insured Yacht").

1025208\304641732.v1

13.     The Named Insured on the Hanover Policy is Defendant, J&S.   See Ex. A, Definition 1, and Declarations Page.   In addition, Defendant, Smith, the Sole Member of J&S, qualifies as an Insured with respect to the liability insurance provided in Section II, because when the Grounding Incident occurred, he was operating the Insured Yacht with the permission of J&S.  See Ex. A, Def. 6.

14.     The Hanover Policy contains the following insuring agreements, which are subject to all of the other terms, conditions and exclusions therein:

### COVERAGE A - PROTECTION & INDEMNITY

WHAT IS COVERED

**We** will pay damages caused by an **occurrence** to which this coverage applies and for which the **insured** shall become legally obligated to pay, arising out of the ownership, maintenance or use of the **insured yacht** and which results in **bodily injury, property damage,** or **pollution.**

**We** will settle or defend, as **we** consider appropriate, any claim or suit for **bodily injury, property damage** or **pollution** covered by this policy, and pay any necessary court costs. The choice of defense counsel is **our** exclusive right. The cost of defense is in addition to the limit of liability under SECTION II-COVERAGE A- PROTECTION & INDEMNITY, as shown on the Declarations Page.

Our duty to defend ends when **we** have paid the applicable limit of liability in the payment of judgments or settlements under SECTION 11--COVERAGE A- PROTECTION & INDEMNITY, as shown on the Declarations Page.

See Ex. A, Section II, Coverage A.

### COVERAGE B - MEDICAL PAYMENTS

WHAT IS COVERED

**We** will pay the necessary medical expenses resulting from a **bodily injury** to **you** or others from an **occurrence** which occurs while in, upon, boarding, or dis-embarking the **insured yacht.** To be covered, these expenses must be incurred within three years from the date of the **occurrence.** If there are any other medical benefits available to the injured person, this coverage will be excess over such other insurance. Medical expenses, as used here means reasonable charges for first aid, ambulance, medical and hospital services, prescription drugs and repatriation. Medical expenses also include reasonable charges for professional nursing and rehabilitation services, prosthetic device expenses and funeral costs.

Medical expenses do not include rest cures, treatment for abuse of or addiction to drugs or alcohol, or in-patient psychiatric care.

Expenses for cosmetic or plastic surgery and any dental or optical treatments or care are excluded, unless necessitated by a **bodily injury.**

4

See Ex. A, Section II, Coverage B.

15.     The Hanover Policy contains the following provision ("Captain Warranty"):

**GENERAL CONDITIONS AND EXCLUSIONS APPLICABLE TO ALL COVERAGES**

CAPTAIN WARRANTY
**You** warrant that the **captain;**

1. will be employed by **you** on a full time basis and shall work solely on the **insured yacht;**

2. shall be in command of the **insured yacht** at all times when it is underway; and

3. may not, under any circumstances, have other employment as a **captain** for any other **yacht** or watercraft.

If any condition of this warranty is not fully complied with, the coverages provided by this policy are null and void.

See Ex. A, General Conditions and Exclusions.

16.     The Hanover Policy defines "Captain" as "the person approved by us and employed as the full time captain of the insured yacht."   See Ex. A, Definitions.   The Declarations identify the approved Captain as "Shane Wrey."  See Ex. A, Declarations Page.

17.     The Hanover Policy also contains the following endorsement, which is part of the policy and supersedes any conflicting provisions in the policy:

**GENERAL CHANGE ENDORSEMENT**

Effective 05/05/2017 it is hereby agreed that:

PERMISSION IS GRANTED FOR OCCASIONAL OWNER OPERATION UNDER
THE FOLLOWING CONDITIONS;

OWNER MAY OPERATE THE VESSEL WITHOUT THE CAPTAIN ABOARD FOR
DAY TRIPS ONLY

OWNER MAY OPERATE THE VESSEL FROM SUNRISE TO SUNSET, NO
OPERATION AT NIGHT UNLESS CAPTAIN IS ABOARD

NO TOWING OF TENDERS UNLESS CAPTAIN IS ABOARD

WARRANTED THREE (3) EXPERIENCED INDIVIDUALS ABOARD AT ALL
TIMES WHILE UNDER WAY

OWNER WILL USE CAPTAIN FOR TRIPS LONGER THAN DAY TRIPS

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

5

See Ex. A, General Change Endorsement, Form No. OM442 1143 07 15.

18.     Finally, the Hanover Policy also contains the following general conditions regarding post-loss or post-occurrence responsibilities of the insured:

> DUTIES OF AN INSURED -WHAT TO DO IN THE EVENT OF A LOSS OR **OCCURRENCE**
>
> In case of a loss or an **occurrence** to which this insurance may apply or if **you** and any insured person are sued in connection with a loss or an **occurrence** which may be covered under this policy, **you** must:
>
> 1. give notice to **us,** or **your** agent or broker, as soon as reasonably possible. **You** must give prompt notice by telephone or in writing. In addition, if **you** think that a crime has been committed, **you** must notify the police, and, if appropriate, the coast guard or other maritime authority;
>
> 3. submit a signed sworn proof of loss statement to **us** within sixty (60) days of our request, that sets forth, to he best of **your** knowledge, the details of the loss and the records needed to verify the loss, the amount of the loss, and **your** interest in any property damaged or lost;
>
> 4. allow **us** to inspect, photograph, appraise and conduct tests on the **insured yacht** or any insured property before the commencement of repairs and/or before property is discarded;
>
> 6. assume no obligation, admit no liability and incur no expense for which **you** or the Company may be liable without **our** written permission, other than reasonable expenses to protect the property from further damage or provide first aid in the event of a **bodily injury;**

See Ex. A, General Conditions and Exclusions Applicable to All Coverages.

19.     On December 29, 2017, Smith, his wife and five other persons boarded the Insured Yacht in Fort Meyers, Florida, intending to travel to Dry Tortugas National Park, stay there overnight, and then travel approximately 70 miles east to Key West and stay there for a couple of days before returning to Fort Meyers ("Fort Meyers – Dry Tortugas – Key West Excursion").  Shane Wrey was never on board the Insured Yacht any time during the Fort Meyers – Dry Tortugas – Key West Excursion.

20.     Smith piloted the boat upon their daytime departure from Fort Meyers.  Although the original plan was to arrive in port at Dry Tortugas in daylight, by mid-afternoon Smith realized that it was going to get dark before they would arrive in Dry Tortugas, and he decided to continue, at a slow speed overnight, so as to arrive the next morning.  During this nighttime

1025208\304641732.v1

journey, the boat was operated by Smith, his wife, and two other passengers, with each person taking two-hour shifts at the helm overnight, and was towing a dinghy.  None of the individuals operating the Insured Yacht during this time held the position of Captain, as defined and identified in the Hanover Policy.

21.    In fact, there was no Captain, as that term is used in the Hanover Policy, on board the Insured Yacht at any time during the Fort Meyers – Dry Tortugas – Key West Excursion.

22.    On December 30, 2017, the second day of the Fort Meyers – Dry Tortugas – Key West Excursion, and while Smith was operating the Insured Yacht, it ran aground on a coral reef while approaching the channel into the Dry Tortugas National Park.

23.    Hanover first received notice of this occurrence by an email from the agent, Lucantha Marine Insurance, LLC, attaching an April 23, 2018 letter from attorney Richard Rusack advising of his representation of Ms. Stanny Park, who alleges to have sustained injuries on or about December 30, 2017 while a passenger on the Insured Yacht.  A true and correct copy of the April 23, 2018 letter is attached hereto as Exhibit B.  Through her attorney, Ms. Park has demanded substantial sums of money from Smith, payable as damages for her alleged injuries.

24.    In addition to the claim asserted by Ms. Park, the U.S. Department of the Interior / National Park Service ("NPS") has asserted a claim for alleged damage to the coral reef. A June 14, 2018 letter to James Smith from the NPS asserts that NPS has determined that the incident "resulted in injuries to park resources including coral reef habitat" and that Smith and the Insured Yacht "may be held liable . . . for response costs and damages relating to this incident."  A true and correct copy of the NPS' June 14, 2018 letter is attached hereto as Exhibit C.  The NPS has demanded substantial sums of money as damages.

1025208\304641732.v1

25.     In addition, on information and belief, the Grounding Incident caused physical damage to the Insured Yacht.  However, no claim was made and no proof of loss was submitted to Hanover for this damage.

## COUNT I

(Declaration as to Coverage –No Full Time Captain)

26.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-25 as if fully set forth herein.

27.     The Captain Warranty quoted above in Paragraph 15 is a condition precedent.

28.     Because the condition of the Captain Warranty that a captain shall be employed on a full time basis to work solely on the Insured Yacht was not complied with, the coverages of the Hanover Policy are null and void.

29.     Smith and J&S violated the Captain Warranty by failing to employ a captain on a full time basis to work solely on the Insured Yacht.  The failure to employ a captain on a full time basis to work solely on the Insured Yacht increased the risk of loss in connection with the operation of the Insured Yacht.

30.     An actual, present and justiciable controversy exists regarding the issues in this Count I, affecting the rights and obligations of the parties under the Hanover Policy.

## COUNT II

(Declaration as to Coverage –No Captain in Command
When Yacht is Underway)

31.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-30 as if fully set forth herein.

1025208\304641732.v1

32.     The Captain Warranty quoted above in Paragraph 15 is a condition precedent.  In addition, the General Change Endorsement quoted above in Paragraph 17 is a condition precedent to coverage.

33.     The Captain Warranty quoted above in Paragraph 15 provided that the captain shall be in command of the Insured Yacht at all times when it is underway.  However, this provision was superseded or modified by the General Change Endorsement quoted above in Paragraph 17 which provides a limited exception to the Captain Warranty by permitting the owner of the Insured Yacht to operate it without the captain aboard "for day trips only." Moreover, the General Change Endorsement affirmatively provides that the owner will use the captain for "trips longer than day trips."

34.     Because the conditions of the Captain Warranty and General Change Endorsement were not complied with, the coverages of the Hanover Policy are null and void.

35.     Smith and J&S violated the Captain Warranty and the General Change Endorsement conditions by permitting persons other than Captain Shane Wrey to operate the Insured Yacht for a multi-day, overnight trip.  Taking the Insured Yacht on an overnight, multi-day excursion while operated by individuals other than an authorized captain increased the risk of loss in connection with the operation of the Insured Yacht.

36.     An actual, present and justiciable controversy exists regarding the issues in this Count II, affecting the rights and obligations of the parties under the Hanover Policy.

<u>**COUNT III**</u>

(Declaration as to Coverage –
Nighttime Operation Without Captain Aboard)

37.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-36 as if fully set forth herein.

1025208\304641732.v1

38.     The General Change Endorsement quoted above in Paragraph 17 prohibits operation of the Insured Yacht at night unless the captain is aboard.  This is a condition precedent.

39.     Because this condition was not complied with, the coverages of the Hanover Policy are null and void.

40.     Smith and J&S violated the condition by operating the Insured Yacht on the night of December 29, 2019 without Captain Shane Wrey aboard.  This increased the risk of loss in connection with the operation of the Insured Yacht.

41.     An actual, present and justiciable controversy exists regarding the issues in this Count III, affecting the rights and obligations of the parties under the Hanover Policy.

## COUNT IV

(Declaration as to Coverage –
Towing of Tenders Without Captain Aboard)

42.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-41 as if fully set forth herein.

43.     The General Change Endorsement quoted above in Paragraph 17 prohibits the towing of tenders unless the captain is aboard the Insured Yacht.  This is a condition precedent.

44.     Because this condition was not complied with, the coverages of the Hanover Policy are null and void.

45.     Smith and J&S violated this condition by towing a tender, *i.e.*, the dinghy referenced above in Paragraph 20, on the night of December 29, 2019, without Captain Shane Wrey aboard.  This increased the risk of loss in connection with the operation of the Insured Yacht.

10

46.     An actual, present and justiciable controversy exists regarding the issues in this Count IV, affecting the rights and obligations of the parties under the Hanover Policy.

## COUNT V

(Declaration as to Coverage –
Untimely Notice of Loss or Occurrence)

47.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-46 as if fully set forth herein.

48.     The Hanover Policy requires the insured to give prompt notice of loss or occurrence to Hanover or to the insured's agent or broker "as soon as reasonably possible," as more fully set forth Paragraph 18.  Such notice is a condition precedent.  Because this condition was not complied with, the coverages of the Hanover Policy are null and void.

49.     Smith and J&S violated this condition by failing without excuse to give notice of the loss and occurrence until more than four months after the Grounding Incident.  This violation prejudiced Hanover.

50.     An actual, present and justiciable controversy exists regarding the issues in this Count V, affecting the rights and obligations of the parties under the Hanover Policy.

## COUNT VI

(Declaration as to Coverage –
First Party Property Coverage for Damage to Insured Yacht)

51.     Hanover repeats and incorporates the allegations contained in Paragraph Nos. 1-50 as if fully set forth herein.

52.     The provisions of the Hanover Policy regarding the post-loss or post-occurrence responsibilities of the insured, quoted above in Paragraph 19, are conditions precedent.  These conditions require the insured to give prompt notice of losses, submit a proof of loss statement,

permit Hanover to inspect the damaged property and to not incur any expense without Hanover's prior approval.

53.     Because these conditions were not complied with, the first party property coverages of Section I of the Hanover Policy are null and void.

54.     Smith and J&S violated this condition by failing without excuse to report the loss until more than four months after the Grounding Incident, failing without excuse to submit a signed sworn proof of loss statement, depriving Hanover of any opportunity to inspect the damage prior to the insured having the damage repaired, and by incurring repair expenses without first obtaining Hanover's approval.  These violations prejudiced Hanover.

55.     An actual, present and justiciable controversy may exist regarding the issues in this Count VI, affecting the rights and obligations of the parties under the Hanover Policy.

WHEREFORE, Hanover requests a judgment:

1.     That there is no coverage under the Hanover Policy for any loss, liability, damages, bodily injury, property damage or injury or damage of any type in connection with the Grounding Incident.

2.     Providing to Hanover all other relief as justice may require.

Dated:  November 20, 2019

1025208\304641732.v1

Respectfully submitted,


s/Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@hinshawlaw.com

HINSHAW & CULBERTSON LLP
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, FL  33301
Telephone: (954) 467-7900
Facsimile: (954) 467-1024

**_Attorneys for Plaintiff_**