UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE HANOVER INSURANCE
COMPANY,

     Plaintiff,

v.                        Case No: 2:19-cv-835-JES-NPM

J&S PROMOTIONS, LLC, JAMES
F. SMITH, and STANNY R.
PARK,

     Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on plaintiff's Motion for Summary Final Judgment (Doc. #53) filed on December 1, 2020. Defendants J&S Promotions, LLC and James F. Smith filed a Response in Opposition (Doc. #55) on December 15, 2020, to which Plaintiff filed a Reply (Doc. #59) on January 5, 2021. Defendant Stanny R. Park (Park) has not filed a response to the motion, although she was provided notice of the time to respond (Doc. #54) and of the date and time of oral argument (Doc. #64). The Hanover Insurance Company filed a Notice of Filing Underwriting Affidavit (Doc. #66) on May 11, 2021. The Court heard oral arguments on May 12, 2021. (Doc. #67.) With the permission of the Court (Doc. #68), the parties (other than defendant Park) filed supplemental memoranda on May 17, 2021. (Docs. ##71, 72.)

On November 20, 2019, the Hanover Insurance Company (Hanover) filed a Complaint for Declaratory Judgment (Doc. #1) seeking determinations of rights and responsibilities under an insurance policy issued by Hanover to defendant J&S Promotions, LLC (J&S or the Named Insured), whose president and sole member is defendant James F. Smith (Smith). (Id. at ¶ 3.) The determinations relate to the existence of coverage for bodily injury and property damage allegedly resulting from the grounding of the insured yacht upon a coral reef on or about December 28, 2017 (the Grounding Incident). (Id., introductory paragraph.) Hanover seeks declarations that for various reasons no coverage is available under the policy for such injury or damage. For the reasons set forth below, the Complaint is dismissed in part for lack of jurisdiction and the motion for summary judgment as to the remaining counts is granted in part and denied in part.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251). In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

Disputes involving marine insurance policies typically fall within a district court's admiralty jurisdiction under 28 U.S.C. § 1333 and Article 3, Section 2 of the United States Constitution. AIG Centennial Ins. Co. v. O'Neill, 782 F.3d 1296, 1302 & n.6 (11th Cir. 2015); Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50 54 (1st Cir. 1995).[1] See also (Doc. #1, ¶ 7.) "Article III of

---

[1] Such disputes may also be brought under the district court's diversity jurisdiction, 28 U.S.C. § 1332, but the Complaint fails to adequately allege the citizenship of the individual defendants because it refers only to residency, not citizenship. (Doc. #1, ¶¶ 4, 5, 8). See Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). Contrary to the assertion in the Complaint (Doc. #1, ¶ 8), the Federal Declaratory Judgment Act does not provide a basis for federal jurisdiction but is procedural only. See Patel v. Hamilton Med. Ctr., Inc., 967 F.3d 1190, 1194 (11th Cir. 2020); see also Household Bank v. JFS Group, 320 F.3d 1249, 1253 (11th Cir. 2003). Despite the agreement in the Final Pretrial Stipulation (Doc. #75, pp., 1, 10-11), the parties may not consent to jurisdiction on a basis which does not exist.

the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" <u>Clapper v. Amnesty Intern. USA</u>, 568 U.S. 398, 408 (2013). This does not include every sort of dispute, but only those "historically viewed as capable of resolution through the judicial process." <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 700 (2013). <u>See also Uzuegbunam v. Preczewski</u>, 141 S. Ct. 792, 798 (2021). An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation. <u>Trump v. New York</u>, 141 S. Ct. 530, 534 (2020); <u>Campbell-Ewald Co. v. Gomez</u>, 577 U.S. 153, 160 (2016), as revised (Feb. 9, 2016). "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 90 (2013).

A claim for a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2202(a), requires the same type of case-or-controversy under Article III. <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007). "In all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists". <u>Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.</u>, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941). "[A]ctions for declaratory judgment on insurance coverage are generally not justiciable until there has been at least a threat of a claim or lawsuit." <u>Progressive Mountain Ins. Co. v. Middlebrooks</u>, 805 F. App'x. 731, 734 (11th Cir. 2020) (citations omitted). Plaintiff must establish a case-or-controversy as to each claim separately. <u>Griffin v. Dugger</u>, 823 F.2d 1476, 1483 (11th Cir. 1987). Even if there is a case or controversy, the Court has discretion not to exercise its jurisdiction. <u>Stevens v. Osuna</u>, 877 F.3d 1293, 1311–12 (11th Cir. 2017).

## II.

Hanover issued Hanover Yacht Policy No. IHP D262113 00 (the Policy) with an insured period of May 5, 2017 to May 5, 2018. (Doc. #1-2, p. 2.)[2] The Policy applies to a 78-foot long, 2010 Marlow 78 Explorer motor yacht named "Quality Time" (the Insured Yacht). (<u>Id.</u>) The Named Insured on the Policy is J&S. (<u>Id.</u>) In addition, Smith qualifies as an Insured with respect to the liability insurance provided in Section II because he was operating the

---

[2] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

Insured Yacht with the permission of J&S when the Grounding Incident occurred. (Doc. #1-2, p. 35.)

The Policy includes two coverage parts: Section I relates to first-party property coverage, while Section II relates to liability coverage. (Id., pp. 38-47). The Policy contains the following relevant insuring agreement relating to damages:

> We will pay damages caused by an **occurrence** to which this coverage applies and for which the **insured** shall become legally obligated to pay, arising out of the ownership, maintenance or use of the **insured** yacht and which results in **bodily injury, property damage, or pollution**.

(Doc. #1-2, pp. 43 (emphasis in original).) The Policy also contains the following relevant insuring agreement relating to medical payments for bodily injuries:

> We will pay the necessary medical expenses resulting from a **bodily injury** to **you** or others from an **occurrence** which occurs while in, upon, boarding, or dis-embarking the **insured yacht** . . ..

(Doc. #1-2, pp. 45 (emphasis in original).) Additional provisions of the Policy will be discussed as necessary to resolve specific issues.

According to Smith's deposition (Doc. #53-4), on December 29, 2017, Smith, his wife, and five other persons (Brian Frye, Melissa l/n/u, Lauren Kasper, Johnny Conser, and Stanny Parks) boarded the Insured Yacht in Fort Myers, Florida. (Id., p. 7.) The group intended to make the 5-6 hour trip to Dry Tortugas National Park,

stay there overnight on the Insured Yacht, then travel approximately 70 miles east to Key West, and stay there for a couple of days before returning to Fort Myers. (Id., pp. 9-10, 33-34.) Although the original plan was to make the 105-mile trip in the daylight, the party got a late start from Fort Myers due to Ms. Park's late arrival. (Id., pp. 9-10.)

Smith piloted the Insured Yacht upon their afternoon departure from Fort Myers. (Id., p. 13.) About 40 miles outside the Tortugas, Smith realized it was going to get dark before they would arrive. (Id., p. 12.) Smith decided to continue at a very slow speed overnight, so as to arrive the next morning. (Id.) During this nighttime journey, the Insured Yacht was alternatively operated by Smith and his wife and by Frye and Conser, in two-hour shifts. (Doc. #53-4, pp. 13-15.) None of the individuals operating the Insured Yacht during this time, or at any time during the trip, was the Captain as defined and identified in the Policy. (Id., pp. 28-31, 34-35.)

In the morning of December 30, 2017, while Smith was operating the Insured Yacht, it arrived at the Dry Tortugas National Park. (Id., p. 5.) The Insured Yacht had been towing a dinghy through the night, but upon arrival Smith and his crew put the dinghy on board the Insured Yacht. (Id., p. 18.) As the Insured Yacht pulled into the boundaries of the port, the crew offloaded the dinghy. (Id., p. 17.)

At about 9:00 a.m. the Insured Yacht either ran aground on a coral reef while approaching the channel into the Dry Tortugas National Park, or "bumped" a rock, causing little or no damage to the Insured Yacht.[3] (Id., pp. 15-19, 25.) The dinghy was not tied to the Insured Yacht at the time of the Grounding Incident, having been disconnected moments before by Conser or Frye, or both. (Doc. #53-4, pp. 18-19.) Additional facts will be discussed as necessary to resolve specific issues.

## III.

In the Complaint, Hanover requests a judgment declaring that "there is no coverage under the Policy for any loss, liability, damages, bodily injury, property damage or injury or damage of any type in connection with the Grounding Incident." (Doc. #1, p. 12.) Hanover now asserts it is entitled to summary judgment as to the requested declaratory judgment (Doc. #53, pp. 15-16), while defendants oppose the merits of the summary judgment motion and assert the lack of subject matter jurisdiction in Affirmative Defense Six. See (Docs. #42, p. 9; #55.) The Court first addresses each count of the Complaint to determine if there is a case or controversy as to that count.

---

[3] Both versions are referred to as the Grounding Incident, although the factual variation is not material to the resolution of the summary judgment motion.

**A. Count VI – First Party Claims For Damage to Insured Yacht**

Defendants argue there is no case-or-controversy as to Count VI, and they are correct. In Count VI, Hanover seeks a declaration that there is no "First Party Property Coverage for Damage to Insured Yacht." (Doc. #1, p. 11.) Hanover asserts that post-loss or post-occurrence obligations required the Named Insured to give prompt notice of losses, submit a proof of loss statement, permit Hanover to inspect the damaged property, and not incur any expense without Hanover's prior approval. (Id. at ¶ 52.) Hanover asserts that Smith and J&S breached these obligations by failing without excuse to report the loss until more than four months after the Grounding Incident, failing without excuse to submit a signed sworn proof of loss statement, depriving Hanover of any opportunity to inspect the damage prior to the Insured having the damage repaired, and incurring repair expenses without first obtaining Hanover's approval, all of which prejudiced Hanover. (Id. at ¶ 54.) Because of these breaches, Hanover asserts the first party property coverages of Section I of the Policy are null and void. (Id. at ¶ 53.)

The record establishes that there is no case or controversy as to first-party claims. The Insureds have not made a claim under the Policy (Doc. #1, ¶ 25), and any claim would now be far beyond the one-year period set forth in the Policy. (Doc. #1-2, p. 50.) There is simply no controversy between Hanover and its

Insureds:  Hanover says the Insureds cannot file a first-party claim based on the Grounding Incident, and the Insureds do not intend to file such a claim.  Accordingly, Count VI of the Complaint is dismissed without prejudice for lack of subject matter jurisdiction.

**B.  Count V – Untimely Notice of Loss or Occurrence**

In Count V Hanover seeks a declaration that there is no coverage because the Insured provided untimely notice of loss or of the occurrence. (Doc. #1, p. 11.) Hanover asserts that the Policy requires the Insured to give prompt notice of loss or occurrence to Hanover, or to the Insured's agent or broker, "as soon as reasonably possible".  (Id. at ¶¶ 18, 48.) Hanover asserts that Smith and J&S violated this condition by failing without excuse to give notice of the loss and occurrence until more than four months after the Grounding Incident, and that this delay prejudiced Hanover. (Id. at ¶ 49.) Because such notice is a condition precedent to coverage, Hanover asserts that the non-compliance results in the coverages of the Policy being null and void.  (Id. at ¶ 48.)

The Policy contains certain post-loss or post-occurrence responsibilities with which the Named Insured must comply "[i]n case of a loss or an **occurrence** to which this insurance may apply or if **you** and any insured person are sued in connection with a loss or an **occurrence** which may be covered under this policy, . .

.." (Doc. #1-2, p. 49 (emphasis in original).) To the extent Count V seeks a declaratory judgment as to First-Party claims, it fails to state a case or controversy for the same reasons which apply to Count VI, and is dismissed without prejudice to that extent. To the extent Count V seeks a declaratory judgment as to third party claims, the jurisdictional discussion below applies.

**C. Counts I through IV, Portion of Count V – Third Party Claims**

Counts I through IV of the Complaint relate to coverage of potential claims by third parties. Defendants argue that there is no case or controversy relating to these counts because there has been no third-party claim filed with Hanover or any lawsuit filed by any claimant. (Doc. #55, pp. 10-12.) Hanover responds that the undisputed facts are sufficient to establish a case or controversy for all third-party coverage issues. (Doc. #59, pp. 4-7.)

Hanover identifies two relevant potential third-party claimants. (Doc. #53, ¶¶ 17-18.) The National Parks Service (NPS) sent Smith a letter dated June 14, 2018, asserting that its preliminary investigation determined that the Grounding Incident injured park resources, including coral reef habitat. (Doc. #1-4, p. 2.) The letter stated that Smith may be liable under federal law for response costs and damages. (Id.) Subsequent correspondence from the NPA demanded more than $85,000 in damages.

(Doc. #59, Ex. 1.) The NPS has not filed any legal action to pursue this matter. The NPS is not a party to this lawsuit, however, and therefore will not be bound by its outcome. As to the NPS, the current lawsuit seeks at best only a non-binding advisory opinion. "[F]ederal courts do not issue advisory opinions." TransUnion LLC v. Ramirez, No. 20-297, 2021 U.S. LEXIS 3401, *17 (June 25, 2021). Therefore, there is no case or controversy as to any of the counts based on NPS's potential claim. Counts I through V are dismissed without prejudice to the extent they are premised on a possible claim by the NPS.

The attorney for Park sent Hanover's agent a letter dated April 23, 2018, asserting a claim against J&S for a traumatic brain injury caused by the Grounding Incident. (Doc. #1-3, pp. 2-3.) In her Answer to the Complaint, Park stated she "has made a claim for damages arising from the December 28, 2017 [Grounding] [I]ncident." (Doc. #17, ¶ 5.) In her deposition, Park claimed damages of $150,000, for which a demand was made. (Doc. #53-6, pp. 20, 28-29.) Park has not filed a lawsuit arising from the Grounding Incident, although the applicable statute of limitations has not expired.[4] The Court finds that Hanover has established a

---

[4] Contrary to the Smith Defendants' argument, simply waiting for the statute of limitations to expire will not necessarily eliminate the existence of a case or controversy. A complaint need not negate a statute of limitations defense. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Additionally, most statutes of limitations are subject to

case or controversy as to those counts relating to Parks. Hanover has established that a third-party claim has been made by Parks and that there is at least a threat of a lawsuit. <u>See</u> <u>Middlebrooks</u>, 805 F. App'x. at 734. Therefore, there is a case or controversy between the Defendants and Hanover based upon Park's third-party claim as to Counts I, II, III, IV, and a portion of V.

**IV.**

The Court will address the merits of each count for which a case or controversy has been established.

**A. Count I:  Employment of a Full-Time Captain**

In Count I of the Complaint, Hanover asserts that the Policy contains a Captain Warranty which is a condition precedent to coverage. (Doc. #1, ¶¶ 15, 27; Doc. #53, pp. 12-13.) This Captain Warranty, Hanover argues, required that a captain be employed on a full-time basis to work solely on the Insured Yacht, and specifically named Shane Wrey as that captain. (Doc. #53, pp. 12-13.) Hanover asserts that the Captain Warranty was violated because Smith and J&S failed to employ a captain on a full-time basis to work solely on the Insured Yacht. (<u>Id.</u>, p. 13.) Count I seeks a declaration that because of this Policy violation "the coverages

---

statutory and equitable tolling, e.g. <u>Fedance v. Harris</u>, No. 20-12222, 2021 U.S. App. LEXIS 18399, at *8 (11th Cir. June 21, 2021), making such a potential defense fluid for someone such as Parks who claims brain injury.

of the Hanover Policy are null and void." (Doc. #1, ¶¶ 27-30.) At oral argument, counsel for Hanover stated that Hanover was not attempting to rescind the Policy. (Doc. #69, p. 14.) Rather, Hanover is asserting that the Policy was null and void only for the Grounding Incident, not claims involving other occurrences. (Id., pp. 14-16.)

The record reflects that an undated Yacht Insurance Quotation by Hanover provided that one of the Special Terms and Conditions was that "[o]ne part-time paid captain" and "[o]ne part-time paid crew Only" was required. (Docs. #1-2, p. 21; #66-1, p. 25.) The Hanover Yacht Insurance Binder effective May 5, 2017, similarly provided that one of the Special Terms and Conditions was that "[o]ne part-time paid captain" and "[o]ne part-time paid crew only" was required. (Docs. #1-2, p. 19; #66-1, p. 27.) The Policy's Declaration Page identifies the Captain as "SHANE WREY" and the "Number of Crew (including Captain: 2 PARTTIME INCLUDING THE CAPTAIN". (Doc. #1-2, p. 3.)

The Policy, however, contains a different requirement, that of a full-time captain. The Policy contains the following "Captain Warranty" provision:

> GENERAL CONDITIONS AND EXCLUSIONS APPLICABLE TO ALL COVERAGES
>
> CAPTAIN WARRANTY
>
> **You** warrant that the **captain**;

1. will be employed by **you** on a full time basis and shall work solely on the **insured yacht;**

2. shall **be** in command of the **insured yacht** at all times when it is underway; and

3. may not, under any circumstances, have other employment as a **captain** for any other **yacht** or watercraft.

If any condition of this warranty is not fully complied with, the coverages provided by this policy are null and void.

(Doc. #1-2, p. 47 (emphasis in original).) The Policy defines "Captain" as "the person approved by **us** and employed as the full time **captain** of the **insured yacht**." (<u>Id.</u>, p. 35 (emphasis in original.) The Declarations Page identifies the approved Captain as "Shane Wrey." (<u>Id.</u>, p. 3.)[5]

The language of the Policy concerning the employment of a full-time Captain is clear and unambiguous. The Named Insured warranted that it would employ a captain on a full-time basis,

---

[5] The Smith Defendants' Fourth Affirmative Defense asserts that the Policy contains ambiguities which must be construed against Hanover. (Doc. #42, p. 9.) However, the Smith Defendants have repeatedly stated that they were not asserting that the Captain Warranty was ambiguous. (Doc. #55, p. 7; Doc. #69, p. 21; Doc #75, p. 7.) It is generally not for the Court to raise an issue which has not been asserted by a party. "In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in <u>Greenlaw v. United States</u>, 554 U.S. 237, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008), 'in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" <u>United States v. Sineneng-Smith</u>, 140 S. Ct. 1575, 1579 (2020).

that the captain would work solely on the Insured Yacht, and that the captain would not have employment as a captain for another yacht or watercraft.  The Policy specifically identified who that captain was to be – Shane Wrey.

The undisputed facts show a clear violation of this portion of the Captain Warranty. J&S and Smith hired a Captain only on an as-needed, part time basis. (Doc. #53-4, pp. 35-36.) While this was initially Shane Wrey, it later became someone else.  (Id.) Contrary to the Smith Defendants' First Affirmative Defense and argument (Doc. #55, pp. 12-14), the presence of three experienced sailors on board the Insured Yacht does not create a material issue of disputed fact as to Count I. The portion of the Captain Warranty at issue in Count I concerned the full-time employment of a Captain, not the operation of the vessel with or without a captain.

The issue remains as to the effect of the breach of the Captain Warranty on coverage.  Because disputes involving marine insurance policies fall within a district court's admiralty jurisdiction, federal maritime law controls.  GEICO Marine Ins. Co. v. Shackleford, 945 F.3d 1135, 1139 (11th Cir. 2019).  In the absence of an established or entrenched federal admiralty rule, however, the Court relies on state law. Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC, 996 F.3d 1161, 1168 n.2 (11th Cir. 2021); Quintero v. Geico Marine Ins. Co., 983 F.3d 1264, 1270–71 (11th Cir. 2020). As the Eleventh Circuit has stated:

> Marine insurance is a curious legal creature, bearing the markings of both the state common law of contracts and the federal common law of admiralty. Although the Admiralty Clause of the United States Constitution vests the federal courts with jurisdiction to hear maritime-contract cases, "it does not follow ... that every term in every maritime contract can only be controlled by some federally defined admiralty rule." Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313, 75 S.C t. 368, 370, 99 L. Ed. 337 (1955). In the absence of a "judicially established federal admiralty rule," we rely on state law when addressing questions of marine insurance. Id. at 314, 320-21, 75 S. Ct. at 370, 373-74.

AIG Centennial Ins. Co. v. O'Neill, 782 F.3d 1296, 1302 (11th Cir. 2015). The language of the Policy conforms with this law: "This policy shall be construed in accordance with the General Maritime Law or Admiralty Rule. If no General Maritime Law or Admiralty Rule applies than the law of the Commonwealth of Massachusetts will apply." (Doc. #1-2, p. 51.)

Hanover asserts that federal maritime law applies, and results in a lack of coverage because the Policy became null and void due to the violation of the Captain Warranty. (Doc. #53, pp. 9-12.) In general, the strict compliance often required by a Captain Warranty is not considered entrenched in admiralty law. See Ocean Reef Charters LLC, 996 F.3d at 1168 (recognizing that to hold that all express warranties in maritime insurance contracts must be strictly construed in the absence of some limiting contractual provision would "eviscerate Wilburn Boat and its

holding that there is no established federal maritime rule requiring strict fulfillment of all warranties in marine insurance policies."). Looking at the specific warranty in this specific Policy, however, establishes that the Captain Warranty is clear and unambiguous as to the effect of a breach: "If any condition of this warranty is not fully complied with, the coverages provided by this policy are null and void." (Doc. #1-2, p. 47.) Federal maritime law, Florida law, and Massachusetts law would all enforce such plain language in a contract. See, e.g., F.W.F., Inc. v. Detroit Diesel Corp., 308 F. App'x 389, 392 (11th Cir. 2009) (stating that the rules of contract interpretation under federal maritime and Florida law are identical); S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc., 702 F. App'x 874, 878 (11th Cir. 2017)("Florida courts enforce contracts according to their plain terms when those terms are unambiguous."); A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 479 Mass. 419, 428, 95 N.E.3d 547, 556 (2018) ("Our precedent instructs courts to examine how a contract, by its plain language, defines the parties' rights.").

Accordingly, the Court determines that there is a case or controversy as to Count I, and that Hanover is entitled to a declaratory judgment that there is no coverage under the Policy as to claims by third parties arising from the Grounding Incident

because the failure to hire a full-time captain as required by the Policy renders the Policy null and void as to this occurrence.

**B. Counts II and III:  Lack of Captain When Yacht Was Underway & During Nighttime Operation**

In Count II, Hanover seeks a declaration that there is no coverage because there was no captain in command when the Insured Yacht was underway during the trip to the Dry Tortugas.  (Doc. #1, ¶¶ 32-36; Doc. #53, pp. 13-14.)  Hanover argues that the Captain Warranty and the General Change Endorsement are conditions precedent to coverage, but that Smith and J&S violated these provisions by permitting persons, other than Captain Shane Wrey, to operate the Insured Yacht during the multi-day, overnight trip, which increased the risk of loss in connection with the operation of the Insured Yacht.  (Doc. #1, ¶¶ 32-33; Doc. #53, pp. 13-14.)  As a result, Hanover argues that coverages of the Policy are null and void.  (Doc. #1, ¶ 34; Doc. #53, p. 14.)

In Count III, Hanover seeks a declaration that there is no coverage based upon the nighttime operation of the Insured Yacht without a Captain on board. (Doc. #1, ¶¶ 38-41; Doc. #53, p. 14.) Hanover asserts that the General Change Endorsement prohibits operation of the Insured Yacht at night unless the Captain is on board. (Doc. #1, ¶ 38; Doc. #53, p. 14.) Hanover asserts that Smith and J&S violated the condition by operating the Insured Yacht on the night of December 29, 2019 without Captain Shane Wrey aboard,

which increased the risk of loss in connection with the operation of the Insured Yacht. (Doc. #1, ¶ 40; Doc. #53, p. 14.)  Because this condition precedent was not complied with, Hanover asserts that the coverages of the Policy are null and void. (Doc. #1, ¶ 39; Doc. #53, p. 14.)

The Captain Warranty not only requires the employment of a full-time captain (specifically Shane Wrey), but provides that the captain "shall be in command of the insured yacht at all times when it is underway; . . ." (Doc. #1-2, p. 47.) The Policy contains an endorsement, however, which supersedes this portion of the Captain Warranty and allows the owner to operate the Insured Yacht on day trips – i.e., "from sunrise to sunset" - without Captain Wrey's presence. (Doc. #1-2, p. 12.) The endorsement provides:

**GENERAL CHANGE ENDORSEMENT**

Effective 05/05/2017 it is hereby agreed that:

PERMISSION IS GRANTED FOR OCCASIONAL OWNER OPERATION UNDER THE FOLLOWING CONDITIONS;

OWNER MAY OPERATE THE VESSEL WITHOUT THE CAPTAIN ABOARD FOR DAY TRIPS ONLY

OWNER MAY OPERATE THE VESSEL FROM SUNRISE TO SUNSET, NO OPERATION AT NIGHT UNLESS CAPTAIN IS ABOARD

NO TOWING OF TENDERS UNLESS CAPTAIN IS ABOARD

WARRANTED THREE (3) EXPERIENCED INDIVIDUALS ABOARD AT ALL TIMES WHILE UNDER WAY

OWNER WILL USE CAPTAIN FOR TRIPS LONGER THAN DAY TRIPS

ALL OTHER TERMS AND CONDITIONS REMAIN
UNCHANGED

(Id.)

The record is undisputed that the Insured Yacht was operated at night without Captain Wrey (or any licensed captain) on board during a trip which was more than a day trip. (Doc. #53-4, pp. 7-12, 35-37.) This is a clear violation of the Endorsement. Contrary to the First Affirmative Defense, nothing in the Endorsement provides that the presence of three experienced persons on board allows operation of the Insured Yacht at night or on trips longer than a day. Since "all other terms and conditions [of the Captain Warranty] remain unchanged," the effect of these breaches is that the Policy is null and void for the Grounding Incident occurrence. Accordingly, the Court determines that there is a case or controversy as to Counts II and III, and that Hanover is entitled to a declaratory judgment that there is no coverage under the Policy as to claims by third parties arising from the Grounding Incident because the failure to have a captain in command of the Insured Yacht and the operation of the Insured Yacht at night without a captain renders the Policy null and void as to this occurrence.

## C. Count IV: Towing Tender Without Captain Aboard

In Count IV, Hanover seeks a declaration that there is no coverage because the Insured Yacht towed a Tender without the

Captain on board. (Doc. #1, ¶¶ 43-46; Doc. #53, p. 14.) Hanover asserts that Smith and J&S violated this condition by towing a Tender, i.e., a dinghy or smaller vessel on the night of December 29, 2019, without Captain Shane Wrey on board the Insured Yacht, which increased the risk of loss in operation of the Insured Yacht. (Doc. #1, ¶ 45; Doc. #53, p. 14.) Because this condition was violated, Hanover asserts the coverages of the Hanover Policy are null and void. (Doc. #1, ¶ 44; Doc. #53, p. 14.)

The General Change Endorsement of the Policy precludes the towing of a "tender" unless the captain is on board. (Doc. #1-2, p. 12.) A "tender" is defined as "any watercraft owned by **you** [the insured] and is normally carried on board the [insured] vessel . . .." (Doc. #1-2, p. 36 (emphasis in original).) It is undisputed that during the trip to the Dry Tortugas the Insured Yacht towed a dinghy. (Doc. #53-4, p. 18.) It is also undisputed that at the time of the incident the dinghy was not being towed. (Id., pp. 18-19.)

The summary judgment record does not establish any connection between the towing and the Grounding Incident. The record does not establish that the improper towing was an independent breach of the Captain Warranty (apart from the lack of the captain as alleged in Counts II and III) which renders the Policy null and void. As to this component of the Captain Warranty, federal maritime law includes state law. Ocean Reef Charters LLC, 996

F.3d at 1169 (concluding that state law governed the effect of Ocean Reef's breaches of the captain and crew warranties). The Policy directs that the State law to be applied is that of Massachusetts. (Doc. #1-2, p. 51.) Massachusetts law, however, directs that the Court apply the law of the State that the parties to the Policy understood would be the principal location of the insured risk, unless some other State has a more significant relationship. OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 90 Mass. App. Ct. 123, 125-26, 57 N.E.3d 18, 20-21 (2016). Here, that state is Florida. The insured is domiciled in Florida, which is generally sufficient. Onebeacon Am. Ins. Co., 57 N.E.3d at 20-21. In addition, the vessel was kept in Florida, as permitted by the Policy (Doc. #1-2, p. 2), and the occurrence at issue began in Florida. Under Florida law, a breach which does not increase the hazard does not void an insurance policy. Fla. Stat. § 627.409(2). While Count IV alleges that the towing "increased the risk of loss" (Doc. #1, ¶ 45), the facts submitted by Hanover do not establish without dispute such an increased hazard. Therefore, summary judgment is not available as to Count IV.

### D. Count V: Notification of Third-Party Claims

As discussed earlier, Count V seeks a declaration that there is no coverage because the Insured provided untimely notice of loss or of the occurrence. (Doc. #1, p. 11.) Hanover asserts that the Policy requires the Insured to give prompt notice of loss or

occurrence to Hanover, or to the Insured's agent or broker, "as soon as reasonably possible". (Id. at ¶¶ 18, 48.) Hanover asserts that Smith and J&S violated this condition by failing without excuse to give notice of the loss and occurrence until more than four months after the Grounding Incident, and that this delay prejudiced Hanover. (Id. at ¶ 49.) Because such notice is a condition precedent to coverage, Hanover asserts that the non-compliance results in the coverages of the Policy being null and void. (Id. at ¶ 48.)

The Policy contains certain post-loss or post-occurrence responsibilities with which the Named Insured must comply "[i]n case of a loss or an **occurrence** to which this insurance may apply . . .." (Doc. #1-2, p. 49 (emphasis in original).) This includes giving notice of a claim "as soon as reasonably possible." (Id.) The Court finds that the record does not support a summary judgment as to the unreasonableness of notice or any resulting prejudice.

**E. Affirmative Defenses**

The Smith Defendants also assert that there are five affirmative defenses which have not been rebutted. (Doc. #55, pp. 3-4, 11-15.) Affirmative Defenses One, Four, and Six have been discussed above. Concerning Defendants' Second Affirmative Defense, whether Plaintiff has suffered any prejudice due to the Smith Defendants untimely notice remains to be an issue as to any counts for which summary judgment was denied or to the extent such

counts were not dismissed due to lack of subject matter jurisdiction. As to Affirmative Defense Eight, there is no requirement that the claim or demand to an insurance company be attached to the Complaint. See Fed. R. Civ. P. 8(a).

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Summary Final Judgment (Doc. #53) is **DISMISSED IN PART, GRANTED IN PART,** and **DENIED IN PART.**

   (a)  As to Count I:

   (1) Count I is dismissed without prejudice for lack of subject matter jurisdiction to the extent it is premised on a possible claim by the National Parks Service.

   (2)  Count I sets forth a case or controversy as to a declaratory judgment based on the claim of Stanny R. Parks.

   (3)  Summary Judgment is granted in favor of Hanover as to Count I. Hanover is entitled to a declaratory judgment that there is no coverage under the Policy as to claims by third parties arising from the Grounding Incident because the failure to hire a full-time captain as required by the Policy renders the Policy null and void as to this occurrence.

(b) As to Count II:

(1) Count II is dismissed without prejudice for lack of subject matter jurisdiction to the extent it is premised on a possible claim by the National Parks Service.

(2) Count II sets forth a case or controversy as to a declaratory judgment based on the claim of Stanny R. Parks.

(3) Summary Judgment is granted in favor of Hanover as to Count II. Hanover is entitled to a declaratory judgment that there is no coverage under the Policy as to claims by third parties arising from the Grounding Incident because the failure to have a captain in command of the Insured Yacht renders the Policy null and void as to this occurrence.

(c) As to Count III:

(1) Count III is dismissed without prejudice for lack of subject matter jurisdiction to the extent it is premised on a possible claim by the National Parks Service.

(2) Count III sets forth a case or controversy as to a declaratory judgment based on the claim of Stanny R. Parks.

(3) Summary Judgment is granted in favor of Hanover as to Count III. Hanover is entitled to a declaratory judgment that there is no coverage under the Policy as

to claims by third parties arising from the Grounding Incident because the operation of the Insured Yacht at night renders the Policy null and void as to this occurrence.

(d)  As to Count IV, summary judgment is denied.

(e)  As to Count V:

(1)  Count V is dismissed without prejudice for a lack of subject matter jurisdiction to the extent it is premised on potential first-party claims.

(2) Count V is dismissed without prejudice for lack of subject matter jurisdiction to the extent it is premised on a possible claim by the National Parks Service.

(3)  Summary judgment as to Count V is denied to the extent Count V is premised on potential third party claims.

(f)  As to Count VI:  Count VI is dismissed without prejudice for lack of subject matter jurisdiction.

2.  The Clerk shall withhold entry of judgment pending resolution of Counts IV and V.

**DONE and ORDERED** at Fort Myers, Florida, this __29th__ day of June, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record